VICTOR BATOR, Plaintiff, *v.* HUNGARIAN COMMERCIAL BANK OF PEST, Defendant.

Supreme Court, Special Term, New York County, February 16, 1949.

*Martin Popper* and *Howard N. Meyer* for defendant.

*Meyer Grouf, Harold Manheim* and *Abbott Gould* for plaintiff.

Pecora, J. This is a motion by defendant, under sections 288, 292, 301 and 302 of the Civil Practice Act, for an order directing the issuance of a commission to take the testimony, upon written interrogatories, of four witnesses in the city of Budapest, Hungary.

The action is brought to recover for an alleged breach of a contract of employment made on December 30, 1938, under which plaintiff — then a citizen of Hungary, but now a citizen of this country — was engaged as general counsel for the defendant. The defendant is a banking institution in Hungary. It maintains no office or place of business here. Jurisdiction was obtained, however, by a warrant of attachment.

Subsequent to the commencement of this action, a second suit was brought in this court by plaintiff against the bank, based upon an alleged further breach of the same contract. The testimony now desired to be taken by the defendant would be of avail to it in both actions. The total amount involved in the two actions is about $100,000.

It appears that the defendant bank at present is either under the virtual control of the Hungarian Government or is in process of nationalization.

In opposing this motion, plaintiff urges that Hungary lies behind the Iron Curtain of communistic totalitarianism; that any witnesses testifying upon Hungarian soil for the defendant bank would be unlikely to tell the truth for reasons of personal safety, if the truth should jeopardize the interests of the bank; and that if their testimony were taken upon written interrogatories instead of oral questions, the plaintiff would have no opportunity effectively to attack the credibility of the witnesses by the usual tests of oral cross-examination.

On the other hand, counsel for the bank maintain that peaceful relations exist between the Governments of the United States and of Hungary; that this court should not pass judgment upon the propriety of the acts of the Government of Hungary, as that is a political question beyond the scope of this court to examine or take into account; and that this court should not assume — especially in the absence of proof — that the Hungarian Government would seek to apply any pressure upon the proposed witnesses to testify falsely in order to promote the interests of the bank.

Unfortunately for the defendant's contention, the court is not without evidence as to what the Hungarian Government might undertake to do to protect the bank which it controls, from the plaintiff's claim.

While the record before the court on the instant motion may not speak conclusively on that subject, the fact remains that since the submission of the motion, a vivid light has been cast upon some of the judicial processes now prevailing in Hungary, especially where the immediate interests of its Government are involved. The picture presented by the very recent trial there of Cardinal Mindszenty is at once frightening and sickening. Utterly devoid of elementary standards of fairness and decency, it has shocked lovers of truth and justice everywhere. Even the highest officers of our Government — mindful as they must have been of the diplomatic amenities between nations at peace — were moved to denounce those processes publicly as " infamous ", " wanton " and " horrifying."

Should this court shut its eyes to a spectacle which has evoked righteous condemnation from every people who are free from the restraints of a terror-inspiring police State? Most certainly not. In rendering justice, courts should always strive to be objective. In evaluating a factual situation, they should consider conditions as they are, not as they ought to be. Their judicial pronouncements should harmonize realism with legalism.

Upon an application of this nature, the court has discretionary power to determine whether the testimony of witnesses outside the State shall be taken under open commission on oral examination, rather than upon written interrogatories. The reasons underlying this rule are tersely and admirably stated in *Deery* v. *Byrne* (120 App. Div. 6, 8 [1st Dept.]) as follows: " When it becomes necessary to take the testimony of a witness without the state, it is apparent that the class of commission to be issued must rest in judicial discretion to be exercised according to the particular facts presented. There is less likelihood that a witness will testify falsely if examined orally than if examined on written interrogatories, and if he should it is more likely that a cross-examination orally will be effective than if it be confined to written interrogatories."

An even fuller discussion of the rule is to be found in the case of *Frounfelker* v. *Delaware, Lackawanna & Western R. R. Co.* (81 App. Div. 67 [1st Dept.]).

Under the circumstances which have been pointed out, it is my opinion that justice imperatively requires that defendant's proposed witnesses be orally examined before an American Consular officer in Budapest rather than upon settled or written interrogatories.

Such an examination will inevitably necessitate the attendance of counsel for both parties, and perhaps of the plaintiff himself.

The question now arises as to who should pay the expenses therefor.

Under the provisions of section 294 of the Civil Practice Act, the court may prescribe the terms and conditions under which a deposition may be taken. In the case of *Cole* v. *Manufacturers Trust Co.* (253 App. Div. 749) the court said: " Where an oral examination outside the State is ordered, the court, in the exercise of discretion, may require either party to pay the expenses of his adversary, but in the absence of unusual circumstances the policy of the courts has been to require the moving party to pay the expenses of the examination.'' (See, also, *Gould* v. *Gould*, 243 App. Div. 589.)

As already noted, the moving party here is the defendant, which prays for the examination of its witnesses upon written interrogatories. The plaintiff, however, asks that if the court should order the taking of the testimony in Hungary by deposition, it be elicited upon oral examination.

The testimony of the proposed witnesses is desired by the defendant, presumably for its benefit in resisting plaintiff's claim. The plaintiff is in no way responsible for the existence of the circumstances — already adverted to — which make it necessary to take the testimony by oral examination. It is only just and equitable that such examination should be at the defendant's expense. Therefore, as a condition to the issuance of the open commission to take the testimony of the defendant's witnesses in Hungary, the defendant will be required, within ten days from the service upon it of a copy of the order to be entered hereon, with notice of entry, to pay to plaintiff the sum of $3,500, which shall cover the fees of his counsel for attending the examination and expenses in traveling to and from the place of examination.

In pressing defendant's motion, its learned counsel vehemently argued that this court should give no heed to plaintiff's protestations concerning the conditions within Hungary. They assert that our courts are not competent " to pass upon or re-examine the conduct of another sovereign government.'' To support their position they cite such cases as *Holzer* v. *Deutsche Reichsbahn-Gesellschaft* (277 N. Y. 474) in which the Court of Appeals said (p. 479): " Within its own territory every government is supreme (*United States* v. *Belmont*, 301 U. S. 324) and our courts are not competent to review its actions. (*Wulfsohn* v. *Russian S. F. S. Republic*, 234 N. Y. 372.) We have so held, ' however objectionable ' we may consider the conduct of a foreign government. (*Dougherty* v. *Equitable Life Assur. Soc.*,

266 N. Y. 71, 83.) ' Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.' "

In deciding the instant motion, however, this court has not passed upon or reviewed any actions of the Hungarian Government in this case. Indeed, no action has as yet been taken by that Government in relation hereto. This court has merely exercised the discretion vested in it by our law in motions of this nature; and in arriving at its conclusion, it has simply taken cognizance of factors which properly were entitled to the court's consideration in determining the merits of defendant's application.

It is the duty of the court, as far as lies within its power, to see to it that any testimony offered upon any trial before it shall be given under the conditions most conducive to its veracity, in an atmosphere in which the witnesses will be free from duress, and in which they may testify to the truth with impunity. These are the main considerations which have prompted this court in its disposition of this motion.

The trial of this action has heretofore been given a preference. As part of the relief it seeks on this motion, defendant asks for a stay of the trial pending the return of any deposition which may be ordered taken. Such a stay will be granted for a period of ten days from the service of a copy of the order to be entered hereon with notice of entry. If within that time the defendant elects to avail itself of the relief which has been granted to it on this motion, and complies with the terms and conditions thereof, a further stay will be granted pending the return of the duly executed deposition. The court will consider the suggestions of counsel as to the limitation of time which should be fixed for the execution and return of the deposition, upon the settlement of the order.

In the event that defendant does not wish to take the testimony upon the terms herein fixed, it may in the alternative accept the stipulation which plaintiff has indicated he is willing to enter into with respect to the testimony of defendant's proposed witnesses. Otherwise the motion will be denied. Settle order.